A bill was presented to the Judge of the Superior Court of Chancery for the Staun-ton District, by Cocke, Crawford & Co. praying that a judgment obtained against them by Robert Pollok & Co. in the District Court of Charlottesville might be enjoined. Neither the plaintiffs nor defendants in this bill were resident within the Staunton Chancery District; but the County of Albemarle, (within which is the town of Charlottesville,) had been annexed thereto by an act of the General Assembly. (1)
Previous to this application, the question, whether the Superior Court of Chancery for the Richmond District, or that for the District of Staunton, possessed the jurisdiction to grant injunctions to the judgments of the District Court of Char-lottesville had been twice agitated.
In the case of Johnson v. Harris, on the 12th of February, 1807, an opinion on this subject was delivered by the Honourable Creed Taylor, Chancellor of the Richmond District, in consequence of an application to him in vacation, for an injunction to a judgment of the Superior Court of Baw holden at Charlottesville; which opinion was in the following words.
“The difficulty, if any, in the present case, arises upon the constructive operation of the act of the last '"Assembly, (d) passed on the 12th of January, by which Albemarle County is made a part of the District for which a Superior Court of Chancery is directed by law to be holden in the town of Staunton. To determine this question, it may not be improper to examine the acts, by which *224 that, and the other Superior Courts of Chancery, were established.
“By the act of the legislature passed on the 23d of January, 1802, (a) concerning the High Court of Chancery, three Superior Courts, in lieu thereof, were established: one to be held in the town of Staunton, for the District assigned to it; another -to be held in this place for the District assigned to it; and the other to be held in the city of Williamsburg for the District assigned to it: a part of the District assigned to the Court of this place was the County of Albe-marle, comprehending Charlottesville, the seat of two common law Courts: the Judges of the Superior Courts of Chancery, in term time, as well as in vacation, were to have, and to exercise, within their respective Districts, the same jurisdiction and powers, as the High Court of Chancery, or the Judge thereof possessed, on the first of January in the year last mentioned.
“By a supplemental act passed on the 2d ofJTebruary in the same year, (b) the distribution of the suits depending in the High Court of Chancery on the first day of that month were to be made in the following order, that is to say; 1. To the Chancery Court of that District in which the defendant should reside, should there be but one; but, if there were two defendants, then to the Chancery Court of that District in which the one first named in the plaintiff’s bill should reside; and, if there were more than two, then to the Chancery Court of that District, in which the majority should reside: but, if the number should be equal in different districts then to the Court of that District, in which the first-named defendant in the plaintiff’s bills should reside.
“2. All injunctions depending in the said High Court of Chancery on the first of February, 1802, should be sent to the Court of that District in which the judgment enjoined was rendered. 3. All injunctions awarded by the Judge of the High Court of Chancery, previous to the first of February, 1802, were to be issued by the clerk of that Court, in like manner, as if the act of the 23d of January had not passed, to be arranged and allotted, as in the other cases of injunctions. The clear and obvious ^intention of the legislature, in branching the High Court of Chancery, was to afford a more speedy, as well as a more convenient administration of justice to the people at large; 1. It would be more speedy, because three Courts would be acting instead of one: 2. It would be more convenient, because they were to be held in convenient places assigned to them, in their respective Districts, and were to exercise the same jurisdiction and powers therein, as the High Court of Chancery, or the Judge thereof possessed, on the first of January, 1802. What jurisdiction and powers did that Court, or the Judge thereof, possess, on that day? They were general over the whole Commonwealth on that day; but, as Judge of the High Court of Chancery, he possessed no jurisdiction nor power on the next day; bur, as Judge of the Superior Court of Chancery to be held in this place, for the District assigned to him, he possessed the libé jurisdiction and power therein, which he had possessed, over the whole Commonwealth, the day before. Such is the force and power of the law: by the same force and power, a like jurisdiction was given to each of the other Superior Courts, at Staunton and Williams-burg, within their respective Districts: the three Superior Courts of Chancery then established by law, within their respective Districts, were to have jurisdiction, (with a single exception, as to residence,, in original suits, in case of a plurality of defendants,) as the High Court of Chancery, or the Judge thereof, possessed it, on the first of January, 1802. And do they not still possess it, within their respective Districts? — They do. Then, as the High Court of Chancery, or the Judge thereof, had the power of granting an injunction to a judgment at law, within this Commonwealth, on the first of January, 1802, the same power belongs to, and should be exercised by, the Superior Courts of Chancery, or the Judges thereof, respec-tivelj', within their respective Districts, at this day; for there is nothing in the above recited act, of the 12th of January last, which affects the jurisdiction of any Court, but only the extent of the Districts: in other words, as the County of Albemarle, by the act last mentioned, has been annexed to the Staunton Chancery district, it must now be considered in the same situation, as if it had been a County enumerated among those composing that District, by the act of the 23d of January, 1802.
*“It is not, as has been supposed, for this Court to inquire, where the defendant resides, because it is not one on those cases, the jurisdiction of which depends upon his residence: — but it is necessary, only, to inquire where is the judgment at law? The answer is, in Charlottesville. Where is Charlottesville? In Albemarle County. To what Chancery District does that County belong? — -To Staunton; within which the Chancellor, at that place, by law, has the same jurisdiction as the Judge of the High Court of Chancery had, and, of course, the Judge of this Court has not. The present application then should be made there — not here. Nor is it material, as has likewise been supposed, to inquire when the judgment at law, which is now sought to be enjoined, was rendered; because the jurisdiction of each of the Superior Courts of Chancery, within their respective Districts, must be over all judgments, from the time each District was formed, enlarged, or diminished, whether such judgments were rendered before, or after-wards. If this was not the case, what Superior Court of Chancery could enjoin a judgment at law of Augusta County, or the Staunton District Court of Daw, rendered before the establishment of the Superior Courts of Chancery? for the act, by which those Courts were established, is as prospective as the act, by which the District of the Superior Court of Chancery, at Staun-ton, has been enlarged, and yet the constant practice of those Courts has been to award injunctions to judgments within their respective Districts, though such *225 judgments were rendered before those Courts existed; and, if this was correct, as it is believed to have been, it must now be equally correct for the Chancellor, at Staun-ton, to award an injunction to a judgment, in the District Court of Charlottesville, though rendered before the County of Albe-marle was annexed to his District. Why? because it would be exercising a jurisdiction within his District, such as the High Court of Chancery had before his District was formed; and, of course, the Court here has no such power, because it would be exercising a jurisdiction without, and not within the District of this Court: for, if the exercise of such power, on the part of this Court, in the present case, would be proper, because the defendant may reside in this District, then it would be as proper, if the judgment was in Monongalia, Dee, or Accomac Courts, should the defendant reside here; and, if under those circumstances it could be done by this Court, then, under like 'x'circumstances, it might be done by each of the other Courts, so that, instead of three Superior Courts of Chancery, exercising within their respective Districts, like jurisdiction and powers, with those of the late High Court of Chancery, for the convenience of the people, we should have each of those Superior Courts exercising a jurisdiction over the whole Commonwealth, to the total destruction of that speedy and convenient administration of justice intended by the Legislature; a thing never thought of by that body, nor authorised by law. Besides, the Courts of common law, within the County of Albemarle, would be no more bound to obey the injunction of this Court than the common law Courts in Augusta would; nor could this Court enforce it; because the County of Albemarle is not within its jurisdiction ; and a Court should never act on a case where it cannot enforce its sentence.
“A difference of opinion, among gentlemen of the first legal talents in their country, has induced the Court to go more at large into this subject, than would otherwise have been done.
“Upon the ground of jurisdiction, the motion is denied.”
In a subsequent case, (Morris v. Trevilian,) depending on the same question of jurisdiction, the Honourable John Brown, Judge of the Superiour Court of Chancery holden at Staunton, pronounced the following opinion.
1 ‘The plaintiff, Morris, prays for relief against a judgment recovered against him by James Trevilian, a resident of Douisa County. His bill states sufficient cause for equitable interposition; and the question made by the plea and demurrer is, what Court shall interpose? An exhibit accompanying the plaintiff’s bill shews that the Judge of the Richmond Chancery District has refused to take cognizance of the cause, because the judgment at law was rendered in the District Court of Char-lottesville, holden in Albemarle County, which County, by an act of the last Session of Assembly, was annexed to this Chancery District; and it is now said that this Court cannot entertain jurisdiction because the defendant, Trevilian, resides within the limits of the Richmond Chancery District.
“In order to protect the property of the1 plaintiff against what appears, from his bill, to be an oppressive judgment, until the question of jurisdiction is settled, I have '^granted an injunction ; and the plea and demurrer aforesaid have been filed to enable the plaintiff to carry his case to the Court of Appeals, before the judgment at law is let loose upon him.
“The interest of the parties, as well as of others who may be similarly situated, requires a prompt opinion on the question. Mine is offered with an unusual degree of diffidence; because I, unfortunately, differ, in my construction of the acts of Assembly of the 23d of January, and 2d of February, 1802, and the 12th of January, 1807, respecting the jurisdiction of the Chancery District Courts, from a Judge whose opinions I shall always highly respect, though I cannot consider them, in legal phraseology, as obligatory upon me. It is readily admitted, that the time of the rendition of the judgment sought to be enjoined is not material; and the question is considered, as if it had been rendered since the 12th of January, 1807. Neither time nor inclination will permit me to go into an inquiry respecting the general jurisdiction of Courts of Chancery. I shall confine myself, principally, to what I consider the true exposition of the acts aforesaid on this subject.
“The act of the 23d of January, 1802, establishing three Superior Courts of Chancery, instead of the one then existing, and which act I consider the charter of our jurisdictional rights, gives, in sect. 7, to each of the Courts thereby established, and to the Judges thereof, in term time, as well as in vacation, the same jurisdiction, and powers, within théir respective Districts, in all and every matter and thing, as the High Court of Chancery, or the Judge thereof, possessed on the 1st day of January, 1802; including, among other specified powers, that of granting injunctions. But the Judge of the High Court of Chancery on the 1st day of January, 1802, had the power to award an injunction against any person residing within the Countj'of Douisa; and, therefore, under the authority of the said 7th section, the Judge of the Richmond Chancery District has now the power to award an injunction against the defendant, in the present case, who resides in the County of Douisa, which is within the Richmond Chancery District as established by that act. Perhaps I would be justifiable in saying that, if there were two defendants in this case, one residing in the Counfy of Douisa, which is within the Richmond Chancery District, and the other in the County of Albemarle, now attached to this District, the plaintiff ':<'would have a right, under the 12th section of the said act of the 23d of January, 1802, to apply for an injunction either to the Judge of the Richmond Chancery District, or of this Court.
“If a bill praying for an injunction can be considered a suit in Chancery, this opinion must be correct; and why it should not I cannot discover. It is not the less a suit *226 in Chancery, because it prays for an injunction to the proceedings at law, till a hearing can be had on the equitable matter set forth in the will; and the 12th section authorises a plaintiff to commence his suit, where there is more than one defendant, in that district in which either of the defendants may reside. The jurisdiction of the Richmond Chancery Court over the present case is therefore plain and obvious, unless it should be supposed that the act of the 2d of February, 1802, has altered the jurisdiction of the Chancery District Courts in cases of injunctions. X say, altered, for X cannot admit legislative construction as binding upon Courts, more especially where the text is less doubtful than the comment. But, if the act of February, 1802, has altered the jurisdiction of the Chancery District Courts, in cases of injunctions, it has, in like manner, altered it and circumscribed the rights of plaintiffs in their election in bringing original suits. The 12th section of the act of January, gives the plaintiff, where there is more than one defendant, a right to sue in the District in which either of the defendants resides. Is this right abridged by the first section of the act of February, directing the clerk of the High Court of Chancery, in the distribution of the causes on his docket, to send the papers, in cases where there is more than one defendant, to the Court of that District, in which the first named defendant resides, if there are but two; but, if more than two, then in which the majority of the defendants reside; and, if more than two, and the number equal, then to the District in which the first named defendant in the plaintiff’s bill resides?
1!If it is said that this was a measure of necessity not intended to change the jurisdiction of the respective Courts, or abridge the rights of suitors, but merely directory to the clerk, and the best possible arrangement which could be made of the causes upon the docket, the truth of the observation will be readily admitted; and the same exposition of the sixth section of the same act, respecting the distribution of injunctions depending in *the High Court of Chancery on the 1st day of February, 1802, is supposed to be correct; viz. that it was 'merely directory to the clerk, in the distribution of the injunctions then in Court; and not a legislative exposition of the law, or, in other words, an alteration of the law respecting jurisdiction, in cases of injunctions thereafter to be applied for; nor intended to abridge the rights of plaintiffs applying for them. I confess that I am unable to discover, in the 6th section of the act of February, 1802, or in any other part of that act, any thing varying the jurisdictional rights of the Courts, or abridging the privileges of suitors from what they were, as confirmed and established by the act of the 23d of January, 1802, either as to original suits, as they are called, or as to injunctions, which are also suits, though commenced in a different way. If it should be inquired why the Legislature has, in the distribution of the causes depending in the High Court of Chancery at the time of the passage of the act of February, 1802, made a distinction between original suits and injunctions? I answer, first, I consider the inquiry immaterial in the present case; and, secondly, that I am, perhaps, unable to give a satisfactory answer. It is sufficient, to justify to myself the opinion which I have formed, that the act directing the distribution of those then depending is silent respecting those which were thereafter to be applied for.
“But, perhaps, the necessity of, sometimes, granting them, without delay, and, very often, the justice of dissolving them as speedily7, may have influenced the Legislature in the enacting of the 4th and 6th sections of that act. If despatch, in cases of injunctions, was their object, the clerk could more readily find in what Chancery District the judgment was rendered than where the plaintiff at law and defendant in the injunction resided; more especially7 as the subpoena might not be returned, and the clerk might not know to what County it was directed; it frequently happening that subpoenas in those cases go out of the office, without any particular direction ; and the 6th section contains a good general direction, in case of injunctions, where, in many instances, no other direction could be had.
‘ ‘If it is supposed that this construction of jurisdictional rights would be productive of great public inconvenience, I can only observe that, where the law is plain and explicit, arguments of inconvenience ought not to prevail *against it: the Legislature, and not the Courts, must correct the evil. But it is doubted whether greater inconvenience would result from this than from a different construction. A. residing in Richmond, recovers a judgment at law, in Staunton, against B. residing in the borough of Staunton. Let it be admitted that the situation of the Court rendering the judgment, and not the residence of the party obtaining it, gives the equitable controul over the case. B. at small expense, and without any inconvenience, can apply for his injunction. A.’s remote situation inspires him with hopes of delay, (too often the great inducement in applications of this kind). He applies for and obtains his injunction, and A. is subjected to great inconvenience and expense in defending himself against an unjust suit. Reverse the case; and let A.’s residence, and not the site of the Court, give the jurisdiction. If B. has a good equitable defence, he will not be deterred from setting it up; and he will be compensated, in part, for his trouble and expense in prosecuting it. Delay, in that case; will not be his object; and A.’s situation will encourage him to hope for a speedy decision. But he will not, for a slight cause, and without hope of procrastination, at great inconvenience and expense, provoke his adversary to an unjust and unequal contest on his own ground. tinder either construction, the territorial line of jurisdiction must be passed; and the question is, Who shall pass it? The plaintiff or the defendant?
* “Let the general fate of injunctions say which construction is likely to be productive of the greatest mischief.
*227 “There are other cases in which, it is believed, greater inconvenience would result from a different, than from the present construction of the right of jurisdiction. The case before the Court affords an example.
“Trevilian, the present defendant, residing in Louisa, recovers a judgment against the plaintiff Morris, in Louisa Court. Suppose this judgment had not been affirmed by the District Court of Charlottesville. An injunction to that judgment, it is admitted by all, must have been applied for to the 'Chancellor at Richmond. But Trevilian ■obtains another judgment, for a subsequent accruing injury, upon the same ground, in the District Court of Charlottesville. To enjoin this judgment, application, it is said, must be made to this Court. Injunctions are obtained in both cases. The ground of equity, and the evidence, in both cases, are the same: *but the Judge at Richmond and the Court here decide the question differently. This would surely be a serious evil; for, though the Court of Appeals would detect and correct the error, yet it might be some time first; and the parties might have been satisfied without resorting there, if there had been but one decision in the case. Let the process of the Court act upon the person of the defendant, and one suit will answer, instead of two.
“To the foregoing remarks, lengthened beyond my first intention, I will only add, that injunctions to judgments could very seldom, if ever, affect the Courts rendering them; the judgments being, in almost every case, beyond the controul of the Courts, and generally, of their clerks, before the injunctions are obtained.
“I have not noticed the act of the last session, annexing the County of Albemarle to this District; but the opinion would have been the same, if that County had been, ■originally, a part of this District.
“My opinion, therefore, is, that though the judgment of the County Court of Louisa has become the judgment of the District Court of Charlottesville, by its affirmance there ; and though Charlottesville, where the judgment was affirmed, is within this District ; yet, the only defendant in this cause residing in the County of Louisa, which is within the limits and jurisdiction of the Richmond Chancery District Court, as established by the act of the 23d of January, 1802, and which act, as it respects jurisdiction over original suits, and injunctions brought since the 2d of February, 1802, has not been altered by the act of the said 2d of February, or any subsequent act, except only as to the County of Albemarle; the Chancery Court for the Richmond District has jurisdiction over this cause; and this Court has no jurisdiction over the same. It is, therefore, this 10th day of April, 1807, adjudged and ordered, that the plaintiff’s demurrer to the defendant’s plea be overruled ; the plea sustained, and the bill dismissed— this Court would have said without ■costs, as the plea and demurrrer were filed, by the direction of the court, to settle the question of jurisdiction; (the plaintiff, on his first application for his injunction, having been informed that this measure would be recommended;) but the defendant’s counsel suggesting that the refusing of costs, if an error, could not be corrected in an appeal taken by the plaintiff; and the court wishing to indulge him in a measure, which, *if erroneous, can in this way be corrected, doth further decree and order that the plaintiff pay to the defendant his costs,” &c.
In conformity with the above opinion JUDGE BROWN would have rejected the application of Cocke, Crawford & Co. for an injunction, upon the ground that he had no jurisdiction in such a case; but, out of respect to the opposite opinion of JUDGE TAYLOR, and from a wish to have the question settled by a decision of the Court of Appeals, he granted the injunction, at the risk of the applicants upon the question of jurisdiction.
After the injunction was granted the defendants choosing to put the issue of the cause upon its own merits, for the purpose of a speedy recovery of the money due them, submitted themselves to the jurisdiction of the Court, and insisted upon filing their answer.
The Court refused to permit their answer to be filed; — ruled their counsel to plead to the jurisdiction, sustained the plea, dismissed the bill, and granted an appeal to the plaintiffs, whereby all further proceedings on the judgment at law remained suspended until the Court of Appeals should decide upon the case.
Under these circumstances, a petition, (1) signed by Chapman Johnson, counsel for the appellees, was presented to this Court, in the beginning of the term, praying the earliest day, which would suit its convenience, to be appointed for taking up this appeal; and stating that the Court of the Staunton District acted under a belief that the delay to the appellees would be short, that the cause would be decided at the first term of this Court, and that thereby a question presenting very frequent difficulties would be finally settled.
The petition was granted, and the record accordingly opened on this day.
Wickham, for the appellants, contended that the same jurisdiction and powers which were vested in the former High Court of Chancery over the whole Commonwealth(a) were now vested in the several Superior Courts of Chancery within their respective Districts only;(b) that the 12th section of the last recited act, (on which section the appellees relied,) and the 3d and 6th of the supplemental *act(c) were to be construed with reference to the general enacting clause bestowing the jurisdiction, (d) and were parts of the same system; from the whole of which, taken collectively, he inferred that the place where the Court, which rendered the judgment at law, was held, and not' the residence of the plaintiff or defendant, furnished the rule of jurisdiction in granting injunctions.
This construction is confirmed by the *228 general law directing the mode of proceeding when injunctions are obtained, (a) which declares that the effect of the injunction is to be suspended, until bond is given in the clerk’s office of the Court where the judgment was rendered; and the clerk of that Court is to endorse on the subpoena that the bond is filed. It is manifest that the clerk of the Court of Common Law is to obey the Chancery Court; and therefore ought to be within its jurisdiction.
If this was not the rule, there might be three injunctions for the same cause: the complainant might try his chance of success in all the Districts. Again ; there is a provision relative to the County Courts, that, where there are several defendants in Chancery, some of whom are not resident within the County, process may be directed, against the non-residents, to any other County ;(b) yet no County Court has ever granted an injunction to the judgment of another County Court.
JUDGE} TUCKER.
Was not that done in the case of Ambler & Wyld? 2 Wash. 36.
Wickham. The objection there was not that one County Court had no right to grant an injunction to the judgment of another County Court. The decision was that, by making a new case in one County, you may examine the propriety of a judgment in another. A County Court (if the rule that equity acts upon the person only is to prevail) would even have a right to enjoin a judgment of a District Court.
For farther observations, I will refer the Court to a better argument than mine, that of Chancellor Taylor in the case of Johnson v. Harris.
As to the question of costs; it is granted that neither party has been to blame; but if the complaint was not to blame, he ought to recover his costs. The rule should be, that where the subject matter is such that costs may be recovered, the plaintiff ought to recover, if he has not been blamable.
*Chapman Johnson, for the appel-lees, said it would be an extreme hardship for them to pay the costs, since they were compelled by the Court to put in the plea to the jurisdiction, to try a question for the public good.
On the main question, he argued, that the rule should be, that the jurisdiction is ascertained by the personal residence of parties. No process of contempt can be issued from a Chancery Court to a Common Law Court. If the Court of Common Law should suppose that the Court of Chancery had exceeded its jurisdiction, and should refuse to obey it, would process go against the Court or clerk? No. — It may indeed against the sheriff; for, quoad hoc, he is an officer of the Court of Chancery.
The 7th section of the act, by which the District Courts of Chancery were established, does indeed give them the same jurisdiction, within their respective Districts, that the late High Court of Chancery had over the whole Commonwealth. As a part of the Charlottesville Common Law District is still attached to the Richmond Chancery District, if this law is to be understood literally, the Richmond Chancery and Staunton Chancery have concurrent jurisdiction over the Charlottesville District; for why give the whole of it to Staunton, when only part has been annexed? But, even if the judgment was of Norfolk County Court,, and the execution in the hands of the sheriff of Norfolk, and all the parties resided in Staunton, the Staunton Chancery ought to have jurisdiction ; for it is abundantly sufficient that equity should have jurisdiction over the persons of parties.
By the 12th section, where one defendant lives in the District, process is to go against others out of its limits. This evidently shews that the Legislature never meant the Court to take jurisdiction, where there was no defendant living in the District. The case is similar of defendants absent from the Commonwealth, (c) Where all the defendants reside out of the State, the suit is not to be brought here.
The law for distribution of the papers in other cases shews that the Legislature understood the persons of parties to furnish the rule of jurisdiction. Is there any peculiar magic in injunctions, that the Legislature made a distinction between them and other cases? No: but it was necessary to promote the speedy distribution. The face of every bill shewed the name of the Court whose judgment was enjoined and afforded a convenient rule for *distribution of the papers, which could not be given in original suits.
The residence of the defendant should furnish the rule of jurisdiction. It is better for the complainant, who is about to force the defendant into a Court of Equity, to go to his place of residence, than vice versa. Suppose a defendant at common law resides in one extreme part of the State, and the plaintiff in another. The Court is. where the defendant at law resides. He goes into his Chancery Court, in his own town. He shews his order of injunction to the sheriff; but does not send a subpoena to’ be served on the plaintiff at law. Years may elapse before he may hear of it; especially if he has an inattentive attorney, as is too commonly the case. But, if you make the person the rule of jurisdiction, the complaint in equity should be compelled to send his subpoena to be served on the person of the plaintiff at Common Law.
But it is said that, upon our construction, there may be three trials of the same injunction. All this might happen; but similar abuses have happened under the former law. A man applies to a Chancellor, and gets an injunction, which is after-wards dissolved. He then goes to a County Court, and, concealing that fact, gets another injunction. If determined on delay at any rate, he might act in the same manner with the several Chancellors; but he would obtain delay, until the fact of the prior dissolution was known, and no longer. This argument has therefore no weight; for, whichever way the Court may decide this question, frauds of this nature, for the sake of delay, may continue to be practised.
Mr. Wickham relies on the circumstance, that the clerk of the Court of Common Law *229 is to endorse on the subpoena that the bond is filed, as putting him under the controul of the Court of Chancery: but this question I think immaterial.
The clerk is as much punishable for contempt of the Chancery Court if he resides out of the District, as if within the District, (a) Therefore the argument makes rather against Mr. Wickham.
The case of Ambler v. Wyld actually ■shews that one County Court sitting in ■Chancery may revise the judgment at law of another: and Ford v. Gardner(b) proves that a Count}’ Court, in its equitable jurisdiction, may revise the judgment of a District Court. Why should not a County Court have the right of enjoining the judgment of another County Court?
'xIt is not on the ground that one Court says to another ‘ ‘you have done wrong;” but that the same questions could not come before one Court at common law that come before the other in equity. The reason that no such injunction ever has been granted is that the defendant always prefers applying to the Court of the County, where he resides, and at the greatest possible distance from the residence of the plaintiff.
Mr. Johnson concluded with observing that as Mr. Wickham had referred to the argument of Chancellor Taylor in his fa-vour, he with equal confidence relied on that of Chancellor Brown which, he considered a better argument than his own.
Wickham, in reply. Some Court must have the jurisdiction. It is, therefore, not sufficient for Mr. Johnson to shew that the ■Staunton District Court has it not; he must also shew what other Court has it. He says, that if the injunction is obtained where the plaintiff at law resides, he may have notice; otherwise not. But, if an injunction be obtained against a man, in Pittsylvania, for example, does it make any difference as to his knowledge of it whether it was granted in Richmond or Staunton?
I contend, if Mr. Johnson’s argument of concurrent injunctions be correct, (for he is obliged to admit concurrent injunctions, upon the ground he takes,) that a man may obtain three several injunctions to the same judgment, not surreptitiously, but stating the case fairly and fully. If the residence of the plaintiff at law is to give the rule, the defendant may suffer great inconvenience, since his property may be seized by an execution, and he may be driven to a distant Court to obtain an injunction. But, according to this doctrine, in cases where the place of residence is unknown, or uncertain, where is the injunction to be obtained?
Friday, October 30. The Judges delivered their opinions.
JUDGE TUCKER.
The record exhibits •the singular case of two Chancellors in different Districts disclaiming jurisdiction *of a case brought before them by a bill of injunction to a judgment rendered in the District Court of Charlottesville. The Chancellor of the Richmond District, it is alleged in the bill, refused to grant the injunction, although the defendants all resided within his jurisdiction, because the Court, whose judgment was sought to be enjoined, was not within his jurisdiction. The Chancellor of the Staunton District granted the injunction, but dismissed the .bill afterwards, because, although the Court which rendered the judgment sought to be enjoined, was within his District, yet none of the defendants resided therein. — This Court has been fa-voured with the reasons of both Judges in support of their respective opinions; and I think it must be confessed, the reasoning of both is very strong, if not perfectly convincing. My own opinion is that both may be right, there being, as I think, a casus omissus in the law, which the legislature only can remedy. But as I understand the rest of the Court to entertain a different opinion, I can, without difficulty, subscribe to it; especially as the only object of the inquiry is where to apply for a remedy in similar cases.
JUDGE ROANE.
I will premise — ■ 1. That the rule, that all statutes in pari materia are to be considered, in forming a construction upon any subject, applies emphatically in this case, where the two principal acts which come in question are nearly cotemporaneous, and avowedly parts of the same system; and, 2d. That a construction ousting a portion of our citizens of all equitable jurisdiction shall not lightly be made in any case; much less in this, in which the Legislature seems anxiously to have wished not only to preserve rights already existing, but to extend and improve them.
By the 7th section of the act of January, 1802, the Chancery Courts thereby established were vested with “the same jurisdiction and powers, within their respective Districts, in all and every matter and thing, as the High Court of Chancery possessed on the first day of January, 1802, including (inter alia) the granting injunctions, &c. subject only to the same constitutional and legal restrictions and limitations as the said High Court of Chancery was then bound by.” The restrictions here alluded to I understand to relate, principally, to the nature of the case, (that is, that it must be an equity case, and not a law case,) and to the amount of the sum in question.
*Prior to the establishment of this new system, the High Court of Chancery could have granted injunctions to any judgment rendered within the limits of its jurisdiction; and this is now also the case with the several County Courts in Chancery who grant injunctions to their own judgments ; without any inquiry, in either case, as to the residence of any defendant. It would seem a natural construction, therefore, and conformable to a general principle, if a like power was deemed to belong to the several Chancery Courts, as to all judgments rendered within their respective Districts. The 7th section of the act of January, 1802, standing singly, is ample to confer this power; but in making a construction upon the subject, we must take into consideration every part of the same and other acts touching the premises.
It is said that the 12th section of the act of *230 January, 1802, which gives leave to a plaintiff to sue within a District in which one of several defendants resides, relates also to injunctions, and controuls the construction of the 7th section; and that injunctions, therefore, shall not be granted by the Judge of the Court, unless one of the defendants resides within the District. This provision in the 12th section seems analogous to the proceeding against absent defendants under our act, where it is necessary that one defendant should reside within the State: but in that case the proceeding is by an original suit in equity; and this circumstance, alone, would be pretty strong to denote that the suits, intended in this last clause, were suits of the same character; viz. original suits in equity. ■ : ' ' : ■
If, therefore, the construction in this case depended solely upon this act of January, 1802, I should doubt extremely whether the operation of the 12th section would narrow that of the 7th, on the point in question, and whether the said 12th-section relates at all to injunctions; more especially as the general Chancery law of 1792, (which now applies within the several Districts, as it before applied to the Commonwealth at large,) while it lays down the restrictions to the obtaining of injunctions, is totally silent as to the residence of the defendant. But this construction does not depend solely upon the act of January, 1802; we receive great light upon this subject from the act of 2d February, 1802, passed only ten days thereafter, and avowedly supplementary to the former. By the 1st section of that act, the clerk of the High Court of Chancery, in arranging and allotting to the several Chancery Courts “the causes and suits depending in *the said High Court of Chancery on the 1st of February, 1802,” is to have regard to the residence of the defendant, or defendants, as the case may be: and by the 6th section thereof, in sending out the “papers in all injunctions depending therein on the 1st of February, 1802,” in ascertaining to what Chancery Court they shall be allotted, he is to be governed by the locality of the Law Court, in which the judgment enjoined was obtained; so, by the 4th section, “all injunctions awarded by the judgment of the High Court of Chancery previous to the first of February, 1802, may be issued by the clerk of said Court in like manner as if the act of January, 1802, had not passed, to be arranged and allotted as is prescribed in other cases of injunctions therein after mentioned,” viz. as is prescribed by the 6th section just noticed.
A review of the several sections of this act of February, 1802, shews evidently that under the general terms “causes and suits” in the 1st section, injunctions were not comprehended, for they are provided for by another section ; and that, in allotting injunctions to the several Chancery Courts, no respect is had to the residence of the defendant, but only to the general principle before noticed; that is, to the Court in which the judgment enjoined was rendered.
These words “causes and suits” in the 1st section of the act of February, 1802, are fully as extensive as the word “suit” mentioned in the 12th section of the act of January, 1802; and yet they are incontestibly explained by other parts of the same act to mean suits, other than injunctions. Wherefore then shall the 12th section of the act of January, 1802, (taking all the acts, into consideration,) be construed to abridge a power given by ample words in the 7th, section of the same act, and either introduce a principle entirely new in our code in relation to injunctions, (respecting the residence of the defendant, rather than the Court in which the judgment was rendered,) or withdraw from (perhaps) a numerous class of cases, all equitable jurisdiction whatsoever.
I have said that the general principle of our laws was that the locality of the Law Court determines the equitable jurisdiction. There is nothing in the act of January, 1802,. singly considered, which abandons this principle; and, on the contrary, the act of February, 1802, seem strongly to support it. In most cases the restraint upon the clerk of the Law Court is amply sufficient for the complainant; for without the act of the clerk no execution can go upon the ^judgment; and, this being the case, the defendants, wherever residing, will find their interest in coming in, submitting to the jurisdiction, and moving to dissolve the injunction. If, before the clerk of the Law Court receives notice that an injunction is awarded, he has, in fact,, divested himself of his power, by actually issuing the execution into another District beyond the limits of the Chancery Court, I am not at present prepared to say whether the process of the Court may not pursue the execution, on the general principle that, where a jurisdiction exists, every necessary power shall be implied, to carry it into complete effect. If so, no difficulty whatever can exist in the case: but, if otherwise, the fault is with the plaintiff in the injunction, who has delayed to apply to the Court of Hquity, or to serve, or give notice of its process, until after the execution has gone beyond the limits of the District. But, even, in that view of the case, the plaintiff, although he might resort to other remedies, is also entitled to his injunction, to avail him quantum valere potest.
< ; < ■ Upon the whole, I think there, is nothing in this case which should induce us to depart from the general principle of our laws upon this subject, which respects the site of the Law Courts in determining the equitable jurisdiction. Some inconveniences may arise from this construction, under certain circumstances: but inconveniences certainty exist under a contrary construction ; and, especially, in creating a concurrence of jurisdictions in favour of several Courts of Equity, and carrying parties defendant into districts extremely remote from the original scene of controversy. My opinion, therefore, is, that the plea in this case ought to have been overruled, and the cause sustained. — With respect to costs, as the shape which the cause assumed was evidently imposed upon the appellee, with a view to settle an important general principle, if we had power, I should be of opinion to divide them; but I believe that the act establishing this Court(a) is *231 imperious, that costs shall be recovered by the party prevailing.
JUDGE DEEMING.
The only question in this case is, whether the Court of the Chancery District of Staunton had jurisdiction to grant an injunction to a judgment at law rendered within, but where the plaintiff resided without the District? or, in other words, whether the jurisdiction of the Court is local and permanent, or mutable and fluctuating all over the State, and must vary according to the residence of a contending party?
^'Previous to the month of January, 1802, the High Court of Chancery had general jurisdiction over the whole State, and was considered as always open, so as to grant injunctions, writs of ne exeat, cer-tiorari and other process usually granted in vacation.
The business in the said Court having accumulated in an extraordinary degree, it was by the Legislature thought expedient, for the more speedy and convenient administration of justice, to branch it into three distinct Courts, assigning to each a particular District, within which the Judges were, respectively, as well in term time as in vacation, to exercise the same jurisdiction and powers as the High Court of Chancery, or the Judge thereof, possessed, or might have exercised on the 1st day of January, 1802. But, in my conception, neither the said Courts, nor the Judges thereof in vacation, possess any jurisdiction or powers, without the limits of their respective Districts as established by law.
With respect to injunctions — in the 6th section of the act of February, 1802, supplemental to the act, passed a few day's before, concerning the High Court of Chancery', it is provided that the papers in all injunctions depending in the said High Court of Chancery, on the 1st day of February, 1802, should be sent, with copies of all orders and interlocutory decrees therein made to the Chancery Court of that District within which the judgment enjoined was rendered ; without any regard to the residence of any', or either, of the parties: and it appears to me, indeed, that, when once a suit is commenced and prosecuted, the parties appearing, either plaintiff or defendant, are always supposed to be in Court, until the business is finally determined.
Suppose that this suit, instead of having been brought in the District Court of Char-lottesville, had-been in the County Court of Albemarle, which is held at the same place, and the defendant had shewn good equitable cause for enjoining the judgment; could not that County Court, with propriety, have enjoined the judgment, without regard to the residence of Pollok, the plaintiff, who, it seems, resides within the Chancery District of Richmond? Certainly it might: and, if so, I can perceive no reason why the Chancery District Court of Staunton should not exercise the same powers. And, suppose an appeal, on either side, from the decision of the County Court on the injunction, to what District would the appeal have property lain? To the District of Staunton, undoubtedly. And why'?- -^Because the jurisdiction is local, and the judgments at law, as well as the decision of the County Court on the injunction would both have been within that District, notwithstanding all the parties reside within the Richmond Chancery District.
If the appellants had obtained an injunction from the Judge of the Richmond District Court, with an order to the clerk of the District Court of Charlottesville, where the judgment was rendered, to suspend the issuing an execution or to the sheriff, (in case one had been issued,) to stop all further proceedings thereon, neither of those officers would have regarded such order; because it would have ‘ been extrajudicial, as coming from a tribunal having no jurisdiction or controul over the judgment at law.
Much has been said as to the inconveniences that would, or might, arise from this construction of the law; but I conceive it might be easily shewn that a contrary construction would be productive of still greater inconveniences; but, however that may be, it is the province of the Legislature, and not of the judiciary', to provide a remedy for the evil, if one really exists.
I am of opinion, upon the whole, that the demurrer to the plea to the jurisdiction of the Court was improperly overruled; and that the decree, dismissing the bill, ought to be reversed.
JUDGE LYOUS(1)
concurring in the opinion delivered by the last two Judges, the decree of the Superior Court of Chancery for the Staunton District was reversed, and the cause remitted for further proceedings. _

 By an act of the session of 1807, c. 72, p. 67, the Counties of Amherst and Nelson, are annexed to the Staunton Chancery District; but the Judge of the Richmond Chancery District, has jurisdiction over the judgments of the Charlottesville common law District Court, where the defendants in such judgments, reside in the Counties of Louisa or Fluvanna. — Note in Original Edition.

See Acts of 1806, c. 94.

 Rev. Code, 1 vol., p. 426.

 Rev. Code, 1 vol., p. 428.

 See the Rule of Court dated May 5th, 1800, ante, III.

 Rev. Code, 1 vol., p. 64, c. 64, s. 8.

W lb. p. 487, c. 297, s. 7.

 lb. p. 428, and 429.

 lb. p. 427, c. 297. s. 7.

 II). 1 vol., p. 68, c. 61, s. 55.

 Rev. Code, p. 37?, c. 236.

 Rev. Code, 1 vol., p. 115, c. 78, s. 2.

 Rev. Code, 1 vol., p. 429, c. 298, s. 5.

 Ante, p. 72.

 Rev. Code, 1 vol., p. 63, c. 63, s. 19.

 This is the last cause in which Judge Lyons delivered an opinion during the present term; his indisposition having prevented him from attending the Court. — Note in Original Edition.